782 F.2d 1366
 4 Fed.R.Serv.3d 253
 Joseph L. BAILEY, Plaintiff-Petitioner,
v.
Allen C. SHARP, Chief Judge, United States District Court
for the Northern District of Indiana, Respondent,
Kevin C. Andrews, Real party in interest.
 No. 85-2798.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 12, 1985.
Decided Feb. 10, 1986.
 
 Roger Wm. Bennett, Bennett, Boehning, Poynter & Clary, LaFayette, Ind., for plaintiff-petitioner.
 Jay T. Hirschauer, Hirschauer & O'Neill, Logansport, Ind., for respondent.
 Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 The jury in this civil rights suit returned a verdict on June 27, 1985, awarding Joseph L. Bailey $80,000 against defendant Kevin C. Andrews. The clerk immediately entered a judgment. The judge then stated in open court: "I will set a briefing schedule. I will probably give you more time than the rules allow but I must--you are on your own as to when you would file any motion for--I mean when you have to file any notice of appeal. I am not giving free advice on that subject. I am just setting the schedule.... It has been determined that the defendant Kevin C. Andrews has until the 15th of July, 1985 to file any and all motions in favor of the motion for directed verdict and indeed to file a motion for a new trial." Andrews filed his motion for a new trial 15 days later, on July 12. The district court granted the motion conditionally on September 9, ordering a new trial unless Bailey accepted a remittitur to $17,000. Bailey rejected the remittitur, so on October 7 the court made the order for a new trial unconditional.
 
 
 2
 Bailey asks us to issue a writ of mandamus directing the district court to set aside the order for a new trial and to reinstate the final judgment. The argument is straightforward. Under Fed.R.Civ.P. 59(b) a party has only 10 days to file a motion seeking a new trial. Andrews took 15. Although the district court gave Andrews 18 days, which he did not exceed, Fed.R.Civ.P. 6(b) states that a court "may not extend the time for taking any action under" Rule 59(b). The Supreme Court has held that Rule 6(b), when applicable, "prohibits the extension of the time period prescribed." Browder v. Director, Department of Corrections, 434 U.S. 257, 261 n. 5, 98 S.Ct. 556, 559 n. 5, 54 L.Ed.2d 521 (1978); Leishman v. Associated Wholesale Electric Co., 318 U.S. 203, 206 n. 4, 63 S.Ct. 543, 544 n. 4, 87 L.Ed. 714 (1943) (dictum). When a district court grants a new trial without having jurisdiction to do so, an appellate court must correct the decision by mandamus. United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947). Confining courts to the lawful exercise of their jurisdiction is the traditional use of the writ. See Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). So, the argument concludes, Bailey is entitled to relief.
 
 
 3
 There are nonetheless two hurdles. The first is that an amendment to the Federal Rules of Civil Procedure raises a question whether the motion was indeed untimely. The second is Eady v. Foerder, 381 F.2d 980 (7th Cir.1967), in which this court held, on similar facts, that the district court has the authority to grant untimely motions. We consider these two issues in turn.
 
 
 4
 * July 12 is 15 days after June 27 (the date judgment was entered), but not all days count. The version of Rule 6(a) that was in effect until the end of July 1985 provided that when the last day falls on a weekend or holiday, the time is extended to the next business day. Under that rule July 8, a Monday, was the last day. On August 1, 1985, a new version of Rule 6(a) became effective. Under this rule, when the time in question is less than 11 days, Saturdays, Sundays, and holidays never count. Application of the new version of Rule 6(a) yields a terminal date of July 12--two Saturdays, two Sundays, and July 4 are excluded. So the timeliness of the motion depends on which version of Rule 6(a) applies.
 
 
 5
 We held in United States v. Kimberlin, 776 F.2d 1344 (7th Cir.1985), that the amendment to Fed.R.Crim.P. 35(b) that went into effect on August 1, 1985, did not revive a motion that became time-barred at some earlier date. That holding does not necessarily preclude retroactive application of the new Rule 6(a). We relied, in part, on the fact that Rule 35(b) allocates authority between court and Parole Commission, an allocation that would be disturbed by permitting a court in 1985 to act in a case that had passed in 1983 to the Parole Commission's authority. Kimberlin, supra, 776 F.2d at 1347-48.* Perhaps Rule 6(a) is different in some way. We think not, however. Rules 6 and 59 allocate decisionmaking authority between the district court and the court of appeals. Once the time prescribed for a motion lapses, the parties' recourse lies in appeal rather than continued importuning of the district judge. Jurisdictional rules are designed to work in mechanical fashion. United States v. MacDonald, 435 U.S. 850, 857 & n. 6, 98 S.Ct. 1547, 1551 & n. 6, 56 L.Ed.2d 18 (1978); Exchange National Bank v. Daniels, 763 F.2d 286, 290-93, reheard in part, 768 F.2d 140 (7th Cir.1985). It would be unfortunate if parties were never sure which court had jurisdiction because of the possibility that the time schedules would be changed at a later date. Here, as in Kimberlin, we conclude that the timeliness of a motion must be determined by the timetables in effect when the motion was filed. The motion was therefore untimely.
 
 II
 
 6
 Eady holds that when a judge extends the time within which to file an application for a new trial, and counsel relies to his detriment on that extension, the "unique circumstances" of this reliance allow the court to dispose of the motion before it. In this case the district judge, true to his word, granted counsel more time than the rules allow. The court then held, citing Eady, that it was entitled to rule on the resulting untimely motion because of counsel's reliance on the extension.
 
 
 7
 Before this court, however, counsel for Andrews frankly admitted that, the day after the district judge granted him additional time, he researched the question whether the judge had the authority to extend the ten-day limitation for filing a motion for a new trial. He apparently read--or more properly misread--Eady as permitting a district court to extend the time despite the strictures of the Rules. If counsel had read Eady correctly, he would have recognized that the district judge had no authority to extend the time. Eady simply creates an equitable exception to the rigid time limitation when a lawyer, not knowing the law, actually relies on the affirmative misstatement of the district judge. See Marane, Inc. v. McDonald's Corp., 755 F.2d 106, 111 n. 2 (7th Cir.1985). See also Needham v. White Laboratories, Inc., 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237 (1981) (Rehnquist, J., dissenting from the denial of certiorari) (actual reliance is an element of the "unique circumstances" exception to jurisdictional rules). If counsel had read Eady correctly, he would have realized that it was incumbent upon him to seek clarification. In short, it is clear that it was not the judge's misstatement but counsel's misreading of the law that led to his failure to file on time.
 
 
 8
 Our decision in Eady does not apply when counsel understand in fact that a motion for a new trial must be filed within 10 days. The district court therefore exceeded its jurisdiction in granting a new trial, and Bailey is entitled to a writ of mandamus. The district court must vacate its order setting the case for a new trial, and it must enter a fresh judgment on the jury's verdict. Andrews may take a timely appeal from this judgment. See Needham v. White Laboratories, Inc., 639 F.2d 394, 397-98 (7th Cir.1981). We express no opinion whether Andrews may have grounds for a motion under Fed.R.Civ.P. 60(b). See Marane, supra, 755 F.2d at 111-12; 11 Wright & Miller, Federal Practice & Procedure Sec. 2812 at pp. 86-87 (1973).
 
 
 9
 The writ of mandamus will issue.
 
 
 10
 EASTERBROOK, Circuit Judge, concurring.
 
 
 11
 The facts of Eady were all but identical to the facts of this case. After entering judgment on a jury's verdict, the district court filed an order stating: "Leave to plaintiff to file any and all post trial motions with brief and written argument in support thereof within 30 days." Plaintiffs filed their motion for a new trial 28 days after the entry of judgment; the court granted the motion; this court held that the district court "properly entertained the motion" (380 F.2d at 981). The court relied on " 'unique circumstances' present in the case at bar" (ibid.). The "circumstance" was that the district court gave the plaintiff more time, and this "was justifiable excuse for plaintiffs' failure to file their motion within ten days" (ibid.).
 
 
 12
 The difficulty with this conclusion is that no excuse, "justifiable" or otherwise, permits an extension of time under Rules 6(b) and 59(b). A judge's extension of time cannot permit the filing of a late motion; the whole point of Rule 6(b) is to say that it does not. The judge's violation of the rule against extensions cannot be a "unique circumstance" permitting an extension.
 
 
 13
 The panel in Eady apparently was confused about the role of justifiable neglect and detrimental reliance. It cited as authority two cases, Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962), and Wolfsohn v. Hankin, 376 U.S. 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964). Wolfsohn is a summary disposition that cites only Harris and Thompson v. INS, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964). Harris, in turn, dealt with a finding under Fed.R.Civ.P. 73(a) (now Fed.R.App.P. 4(a)), which expressly allowed a district court to extend the time within which to file a notice of appeal. The district court, acting before expiration of the 30 days automatically available for an appeal, had extended the time to 60 days, as the Rule permits if there is "excusable neglect or good cause." The court of appeals held that the circumstances on which the district court relied did not amount to "excusable neglect or good cause;" the Supreme Court held, in contrast, that if a party relies on a district court's extension of time and delays the filing of an appeal, a court of appeals ought not to throw out the appeal because of a disagreement with the underlying finding. Subsequent reexamination of the finding merely traps the unwary. A party could avoid the trap only by appealing within the 30 days, yet the purpose of the extension of time was to allow that decision to be deferred.
 
 
 14
 Harris does not support Eady. The district court has no power, comparable to that supplied by Rule 4(a), to extend the time within which to seek a new trial. The holding of Harris--that an appellate court should not second-guess the wisdom of the exercise of discretion under Rule 4--does not provide district judges with the discretion that Rule 6(b) expressly removes. Timeliness affects the jurisdiction of the court; jurisdiction is power to act; a court without power simply may not act, no matter how compelling the circumstances or how equitable the claim.
 
 
 15
 Thompson, too, deals with the timeliness of an appeal rather than the effectiveness of a motion. Twelve days after the entry of judgment a party filed a motion for a new trial. The district court assured him that the motion was timely and took it under advisement. If the motion was timely, appeal was impossible, for a timely motion for a new trial suspends the finality of the judgment. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). By the time the judge decided the motion, the original time within which to appeal had run. The Court held that when a party performs "an act which, if properly done, postponed the deadline for filing his appeal" and the district court "concluded that the act had been properly done" (375 U.S. at 387, 84 S.Ct. at 398), the time to appeal starts from the date of the district court's action. Like Harris, Thompson rests on the fact that the rules permit certain things to extend a period of time. It is then necessary to decide how a mutual mistake about the existence of this time-extending act will affect an appeal. The foundation for a case such as Thompson--a rule enlarging the time under specified circumstances--is missing here, for Rule 6(b) says that there shall be no enlargments.
 
 
 16
 It is therefore no surprise that Eady stands alone. So far as I can determine, no other court of appeals permits a district court to act on a Rule 59 motion filed more than 10 days after the entry of judgment, no matter the excuse. See 4 Wright & Miller, Federal Practice & Procedure Sec. 1168 (1973) (characterizing Eady as the only case of its kind, a characterization the 1985 pocket part does not retract). Perhaps more interesting, no other case in this court of appeals has followed Eady. Cases both before and after Eady hold that purported extensions of time under Rule 59(b) are ineffectual.
 
 
 17
 In Hulson v. Atchison, Topeka & Santa Fe Ry., 289 F.2d 726 (7th Cir.), cert. denied, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961), the district court granted a 10-day extension of time within which to seek a new trial. The court acted on a motion by plaintiffs; defendants represented that they did not object. Plaintiffs took all the time the court allowed them, but when they filed the motion the defendants opposed it, relying on Rule 6(b). This court held that the defendants were right; the extension was unauthorized, the motion ineffectual. See also Nugent v. Yellow Cab Co., 295 F.2d 794 (7th Cir.1961). Eady did not cite either Hulson or Nugent. The panel was not authorized to overrule them. In more recent years we have repeatedly said that the time within which to file a motion for a new trial may not be extended. E.G., Marane, Inc. v. McDonald's Corp., 755 F.2d 106, 111 (7th Cir.1985); Textile Banking Co. v. Rentschler, 657 F.2d 844, 849 (7th Cir.1981).*
 
 
 18
 Eady appears in our cases--in the rare occasions on which it appears at all--for a point related only to Thompson. For example, in Marane we cite Eady for the proposition that "an appellate court may and should hear an appeal even though it is not timely, if the appellant reasonably relied on an erroneous statement of the district court that the appeal or motion was timely, and the appeal would have been timely if the district court had been correct." 755 F.2d at 111 n. 2. This is the holding of Thompson, and it has nothing to do with the district court's authority to grant the relief belatedly sought. Parisie v. Greer, 705 F.2d 882 (7th Cir.1983) (en banc), holds that until the district court files a judgment the time for appeal does not begin to run. 705 F.2d at 883, 890-92. Three judges filed a concurring opinion invoking the "unique circumstances" doctrine, see id. at 897-98 (Swygert, J., joined by Cummings, Ch.J. and Cudahy, J.); they used this doctrine to support the timeliness of an appeal, as in Thompson. Even so, a majority of the court refused to accept these judges' position. See id. at 883 (per curiam), 887-89 (Wood, J., joined by Pell, Bauer, and Coffey, JJ., relying on Browder to support a conclusion of no jurisdiction), 891-92 (Eschbach, J., rejecting Judge Swygert's opinion), 892 (Posner, J., rejecting Judge Swygert's views in reliance on Rule 6(e)). So our en banc decision in Parisie calls into question the "unique circumstances" doctrine and thereby Eady, even though Parisie, like other recent cases, was concerned only with appellate jurisdiction.
 
 
 19
 Rule 6(b) vitiates explicit orders extending the time. The order cannot control just because people may rely on it; Rule 6(b) says that they may not rely. Unless every effort to extend the time is a "special circumstance" justifying the extension--in which event Rule 6(b) is a dead letter, each violation a self-fulfilling prophecy--the district court's order of June 27 had no effect. The rules were designed to be applied mechanically, see Browder v. Director, Department of Corrections, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978), and that design binds us. Cf. United States v. Locke, --- U.S. ----, 105 S.Ct. 1785, 1793, 1796, 85 L.Ed.2d 64 (1985).
 
 
 20
 Professors Wright and Miller supply the only principled explanation for Eady that I have been able to find. They conclude that the extension of time allowed by Eady is "similar" to the sort of extension allowed by Thompson, because each preserves a procedural right that may be lost by a combination of a judge's error and a lawyer's inattentiveness. The extension therefore "serves the interest of justice." Wright & Miller, supra, Sec. 1168 at p. 639. Wright and Miller find authority for this in Fed.R.Civ.P. 1, which calls for a "just ... determination of every action." Although they recognize that there is a distinction between extending the time for appeal--which saves the appellate court's jurisdiction from erosion by a district court's error--and extending the time for the district court itself to act, they find this distinction "somewhat formalistic" and conclude that it "ignores the fact that there is probably little qualitative difference to the litigant between the right to file a motion for a new trial and the right to file an appeal." Id. at 641.
 
 
 21
 There is much to the concern that litigants not be deprived of procedural rights by judicial error. This underlies Thompson as well as the arguments of Wright and Miller. Yet their position is more appropriately a request to the Supreme Court to amend Rule 6(b) than it is a justification for a lower court to disregard it.
 
 
 22
 The federal rules are full of occasions on which the erroneous action of a court may undermine the procedural rights of a party. Perhaps the most notorious is Fed.R.Civ.P. 77(d). The time for appeal begins to run with the entry of judgment, not with a party's notice of the judgment. Sometimes the party never gets notice; the clerk may neglect to send notice, or the mails may miscarry. District courts used to deal with this by vacating and reentering their judgments, restarting the time for appeal. Rule 77(d) forbids the practice, and as a result people may lose the right of appeal without ever learning that there was a judgment they were entitled to appeal. See National Coalition for Public Education and Religious Liberty v. Hufstedler, 449 U.S. 808, 101 S.Ct. 55, 66 L.Ed.2d 11 (1980), dismissing for want of jurisdiction an appeal from 489 F.Supp. 1248 (S.D.N.Y.) (the dismissal does not state reasons, but the only one given in the papers before the Court was Rule 77(d)). See also Rodgers v. Watt, 722 F.2d 456, 458-59 (9th Cir.1983) (en banc); James v. United States, 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 615 (1982) (Brennan, J., dissenting from the denial of certiorari).
 
 
 23
 The Advisory Committee's notes to Rule 77(d) explain that the prohibition on the vacation and reentry of judgment protects the integrity of Rule 6, which bans extensions of time by the district court. Allowing an extension of time would "seriously affect[ ] the finality of judgments." The reason is easy to see. A litigant who wanted additional time to appeal could obtain it by asserting that the judgment "got lost" or was never sent, and there would be continuing requests to recognize "special circumstances" to provide time beyond the maximum 60 days. The price of enforcing the rules and producing real limitations on time is that an occasional litigant slips between the cracks. The choice reflected in Rule 77(d) is that it is better to suffer occasional misfortunes of this sort than to allow district judges, responding to claims of "unique circumstances," to extend the time beyond the provisions of the rules.
 
 
 24
 The same thing is true of Rules 6 and 59. It is too easy for a litigant to say that he "relied" on a mistaken decision by a judge to grant more time than the rules allow. Rule 6 means that one may not rely on this sort of decision. Wright and Miller recognize the point. After endorsing Eady in principle, they take it all back:
 
 
 25
 [A]n intelligent reading of the federal rules would have made it quite clear [in Eady ] that the district court had no authority either to entertain a new trial motion filed more than ten days following entry of judgment or to grant an enlargement of the appeal period. In this context, therefore, perhaps reliance on a clearly erroneous action of the district court should not have been considered reasonable. It is somewhat anomalous that although simple inadvertence, ignorance of the rules, or unfamiliarity of them usually will not constitute "excusable neglect" for purposes of Rule 6(b)(2), a misconception of the express time provisions in Rule 6(b), 59, and former Rule 73(a) does not bar a party from invoking the principle of unique circumstances.
 
 
 26
 4 Wright & Miller, supra, at p. 642. Ultimately they say that although "reasonable reliance" should extend the time, Rule 6 is clear enough that reasonable lawyers cannot rely.
 
 
 27
 At all events this is no longer 1973, when Wright and Miller wrote. Thompson then stood unquestioned. More recent cases have cast a shadow over that decision. The Supreme Court only recently informed us that "with respect to filing deadlines a literal reading of Congress' words is generally the only proper reading of those words." Locke, supra, 105 S.Ct. at 1792. The aggrieved party in Locke sought one extra day, based on arguments that the statute was ambiguous, that he had relied on a misleading official construction, and that he had not adequately researched the question. The Court's reply: Businesses should have "checked the regulations or ... consulted with an attorney for legal advice." Id. at 1793.
 
 
 28
 Other cases are to the same effect. Griggs v. Provident Consumer Discount Co., supra, holds that an appeal filed in advance of a motion under Rule 59 becomes a nullity the instant the Rule 59 motion is filed; the aggrieved party must file a fresh appeal later or forfeit all review. The decision enforced the literal language of the rule, over a dissent contending that courts should be allowed to bend jurisdictional requirements to prevent injustice to innocent litigants. 459 U.S. at 66-68, 103 S.Ct. at 406-07 (Marshall, J., dissenting). We have since taken the Supreme Court at its word and held that even excusable ignorance of the rule of Griggs does not allow an appeal. Averhart v. Arrendondo, 773 F.2d 919 (7th Cir.1985).
 
 
 29
 Perhaps most importantly for our current inquiry, Browder, decided in 1978, drains Thompson of generality. Twenty-eight days after the entry of judgment, a party filed in the district court a "motion for stay," making arguments of the sort usually contained in motions under Rule 59. The district court entertained the motion on the merits and set the case for a new evidentiary hearing. Later the court entered a fresh judgment, and the losing party appealed. The Supreme Court held this appeal untimely. Although the district court entertained the motion--and did so at a time when there was still time left in the maximum 60 days for an appeal--the motion, being ineffective under Rule 59, did not toll the time for appeal. The Court repeatedly remarked that the rules were designed to create bright-line tests of timeliness and that they would be enforced as written.
 
 
 30
 Whatever vitality Harris and Thompson retain after Locke, Griggs, and Browder, one can at least justify those cases by saying that the rules allow some extensions of time to appeal and that district courts ought not be allowed to interfere with an appellate court's jurisdiction. None of the Supreme Court's cases supports a principle that a district court may extend its own jurisdiction--in the face of an express prohibition in Rule 6--by the expedient of granting an extension that colorably induces reliance. The district court's jurisdiction ran out after ten days, and it was powerless either to give anyone more time, or to grant a new trial on its own motion. A court without jurisdiction is a court without power, no matter how appealing the case for exceptions may be. Professional Managers' Association v. United States, 761 F.2d 740 (D.C.Cir.1985).
 
 
 31
 There is one other way to justify Eady. Rule 58 provides that the clerk shall prepare and enter the judgment "forthwith" after the verdict, as the clerk did here, "unless the court otherwise orders". By delaying the entry of judgment a judge may give a party more than ten days after the return of the jury's verdict within which to file a motion for a new trial. The district court in this case might have told the clerk to defer entry of the judgment for ten days, and if the clerk had done this the motion of July 12 would have been timely.
 
 
 32
 This position would prove far too much, however. If we are to go by what "might have been," then not only Rule 6 but also the time limits in Rule 59 would be ineffectual. So, too, the time limits for appeal would lose their significance. Under Fed.R.App.P. 4 a district court may not extend the time within which to appeal more than 60 days after entry of judgment. An argument that the judge could have postponed entry of judgment cannot give parties unlimited time within which to appeal, else the whole system of time limits on jurisdiction comes apart. We must therefore take the entry of judgment as a given. What the judge might have done cannot override what he did.
 
 
 33
 These considerations require us to overrule Eady, and to overrule it now rather than to wait for the case of some unfortunate who really is taken in by a purported extension of time. The court concludes that as soon as a lawyer reads Eady, he knows that Rule 6(b) makes extensions of time ineffectual, and he can no longer claim that he was misled by the district court. The only lawyers entitled to the benefit of Eady are those who have never heard of it. The difficulty with this position is that it makes jurisdiction depend on a detailed factual inquiry into the mental processes of counsel. Jurisdictional rules are meant to be simple. Counsel for Andrews was commendably candid in saying that he found Eady while looking for an answer to his question about the extension of time. Other lawyers may not be so forthright. It is not heartening to tell district judges that in the future they should turn counsel into witnesses, and let them cross-examine each other, in order to determine whether they are entitled to act on belated motions under Rule 59.
 
 
 34
 Too, Eady could be read just as the lawyer for Andrews read it--as permitting lawyers to take advantage of extensions they receive from district courts. The district court in this case read Eady as authorizing the extension of time. To leave Eady undisturbed is to invite future claims of reliance, not only on a misreading of Rule 6 but also on a misreading of Eady. It is not a good idea to make questions of jurisdiction turn on the outcome of what may be lengthy factual inquiries into the knowledge and mental processes of counsel.
 
 
 35
 It would be prudent to clear Eady from the books. Derelicts confuse the law, and courts should try to reduce rather than perpetuate confusion. Eady is inconsistent with cases that came before it and with cases decided after it. It empties Rule 6(b) of meaning. It produces a conflict among the circuits. Whatever doctrine may govern the timing of appeals when people think, mistakenly, that they had filed a timely Rule 59 motion--the subject of Thompson rather than Eady--there is no authority for entertaining and granting a Rule 59 motion that is in fact untimely.
 
 
 36
 This means that counsel who are unaware of the time limits and who mistakenly rely on the pronouncements of district judges may forfeit the right to obtain new trials. Forfeitures are not necessarily disastrous; Andrews still has an appeal. But any inadvertent surrender of a legal right is to be regretted. In Averhart v. Arrendondo, supra, responding to a related problem arising from the fact that a party must file a fresh notice of appeal after the denial of a motion under Rule 59, we requested district judges to give notice to pro se litigants about the timing of any necessary appeals. Perhaps it is a good idea to give a notice to the bar of the limits created by Rules 6 and 59; perhaps every judgment should be accompanied by some stiff warnings about the strict limits on extensions of time. This is more appropriately a question for the consideration of the Standing Committee on Practice and Procedure of the Judicial Conference, which recommends changes in the federal rules. The Standing Committee and its Advisory Committee on Civil Rules should take a close look at this problem, and the sooner the better.
 
 
 
 *
 The dissenting opinion in Kimberlin argued that the former Rule 35(b) should not have been construed to extinguish jurisdiction, not that the new rule should apply retroactively. 776 F.2d at 1350 (Ripple, J., dissenting)
 
 
 *
 Other circuits follow Hulson rather than Eady. E.G., Merrel-National Laboratories, Inc. v. Zenith Laboratories, Inc., 579 F.2d 786, 790 (3d Cir.1978) ("Defendants have argued that the time for filing a motion [under Rule 59(e) ] should be tolled because of their alleged reliance on statements of the trial judge's law clerk and actions by the judge himself. The ten-day limitation on the time for making such motions may not be waived by the trial judge."); Raughley v. Pennsylvania R.R., 230 F.2d 387, 390 n. 2 (3d Cir.1956) (Rule 6(b) "renders a court powerless to entertain" untimely motions); Beliz v. W.H. McLead & Sons Packing Co., 765 F.2d 1317, 1325 (5th Cir.1985); Gribble v. Harris, 625 F.2d 1173, 1174 (5th Cir.1980); Martin v. Wainwright, 469 F.2d 1072 (5th Cir.1972), cert. denied, 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973); Fairway Center Corp. v. U.I.P. Corp., 491 F.2d 1092, 1093 n. 1 (8th Cir.1974); Weir v. United States, 339 F.2d 82, 83 (8th Cir.1964)