811 F.2d 1112
 Bankr. L. Rep. P 71,684
In the Matter of Andrew H. KILGUS, Debtor.
David REICHMAN and Reichman Enterprises, Inc., Appellants,
v.
UNITED STATES FIRE INSURANCE COMPANY, Appellee.
 No. 86-2072.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 5, 1987.
Decided Feb. 9, 1987.
Rehearing Denied April 13, 1987.
 
 Rodney A. Brown, Matays Hughes & Brown, New York City, for appellants.
 William I. Covey, Heyl, Royster, Voelker & Allen, Peoria, Ill., for appellee.
 Before POSNER and EASTERBROOK, Circuit Judges, and PARSONS, Senior District Judge.*
 EASTERBROOK, Circuit Judge.
 
 
 1
 United States Fire Insurance Co. issued to David Reichman a policy of insurance on a DC-3 airplane. The airplane was stolen promptly after the policy issued in July 1982 and later was impounded by Colombia as an instrumentality of the drug trade. Andrew Kilgus filed a petition in bankruptcy in September 1982, and the next month the trustee of Kilgus's estate filed an adversary proceeding against Reichman and U.S. Fire. The complaint alleged that Reichman and Kilgus were joint owners of the airplane and that Reichman had defrauded Kilgus by obtaining the insurance policy in Reichman's name alone. (Reichman and Reichman Enterprises, Inc., were the named insureds; for simplicity we ignore the corporation.) The trustee asked the bankruptcy court to fix the interests of the estate and Reichman in the proceeds of the policy. U.S. Fire filed an answer, and a cross-claim against Reichman in December 1982. It maintained that the policy was void because Reichman had lied about both the ownership of the plane and its intended use. U.S. Fire sought a declaration that it owed nothing. A stamp on the cross-claim states that U.S. Fire served counsel of record.
 
 
 2
 Reichman had been served with the trustee's complaint but had not answered or appeared in the case. Because Reichman had not appeared, the language in the certificate of service of the cross-claim, taken literally, meant that Reichman had not been served. On January 21, 1983, U.S. Fire moved for a default judgment against Reichman, serving Reichman personally. Although Reichman had not appeared, he must have been discussing settlement with the trustee, because on January 28 the trustee's lawyer sent a letter to Reichman containing the following information:
 
 
 3
 United States Fire has filed motions requesting the court to disapprove of the settlement and to enter a default judgment against you upon its crossclaim.... All of these matters are set for hearing before Judge Lipkin on March 7, 1983 at 10:00 a.m. Neither the bankruptcy court nor the trustee is in a position to advise you as to whether you should retain counsel in this case to represent your position with regard to those controversies. You should, however, be advised that you are now in default under the rules, since you have not filed an answer to the United States Fire crossclaim against you. In view of that fact, you should obtain advice from independent counsel as to the manner in which you should proceed. If you do not want to go to the expense of retaining local counsel in Peoria, at least consult your attorney in New York, Mr. Gould, and show him the documents filed in this proceeding.
 
 
 4
 The reference to Reichman's attorney in New York was prompted by the fact that Reichman had filed suit against U.S. Fire in state court in New York, seeking to compel U.S. Fire to compensate Reichman for the stolen airplane. The same controversy therefore was before two courts simultaneously.
 
 
 5
 Despite receiving the motion and letter, Reichman neither answered U.S. Fire's cross-claim nor appeared on March 7. On March 16, the bankruptcy judge proposed to enter a default judgment against Reichman. Because the local rules at the time, issued in the wake of Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), did not allow a bankruptcy judge to enter final judgment in an adversary proceeding, the bankruptcy judge's proposal went before the district judge for approval. On March 31, 1983, the district judge withheld his approval of the default judgment for the time being.
 
 
 6
 All of this must have gotten Reichman's attention, because on April 1 his counsel finally appeared with a motion for leave to answer the cross-claim. At a hearing on April 25, the bankruptcy judge peremptorily declined to allow Reichman to file an answer. The judge treated the motion as one to set aside the default and denied it because the letter of January 28 had given Reichman ample notice of the cross-claim, motion, and hearing. Reichman now "appealed" this decision to the district court, although so far as the local rules were concerned there was nothing to appeal--for nothing could happen in the adversary proceeding without being confirmed by an Article III judge. Reichman's "statement of issue to be presented on review" was "Did the Bankruptcy Judge correctly decide that [Reichman] should have a default judgment entered against [him] on the cross-complaint?"
 
 
 7
 The question was briefed before the district judge, who then issued the Delphic order: "After a hearing in which oral arguments were heard by this Court, the Order of the Bankruptcy Judge is AFFIRMED." The "Order" must be the order refusing leave to file an answer, because a preamble to this disposition had treated the default judgment and the order as separate matters. The district judge gave no reasons--either for refusing to allow the answer or for ignoring the default judgment, which, because of the decision of March 31, still had not been entered.
 
 
 8
 Back in the bankruptcy court, Reichman paid $4,000 to settle his dispute with the trustee. U.S. Fire prevailed against the trustee. That made the dispute between Reichman and U.S. Fire irrelevant from the trustee's point of view. The adversary proceeding and the Kilgus bankruptcy were terminated by a final judgment on September 27, 1985. The judgment dismissed "all causes of action" and, everyone believes, implicitly contains the formal default. Reichman appealed again. The district judge "dismissed" the appeal on the ground that he had approved the default judgment back in 1983. Reichman has appealed to us.
 
 
 9
 The case contains a skein of procedural blunders--complaints and cross-complaints not served and ignored, "judgments" disregarded by the district court and not entered by the bankruptcy court, an order "affirmed" in 1983 when there was no outstanding order to affirm (as opposed to enter initially), an appeal "dismissed" in 1986 when the court plainly had jurisdiction. The mess we have been served up contains questions about our own jurisdiction. U.S. Fire contends that we have none because Reichman, having appealed once to the district court, could not appeal a second time but had to appeal the order of September 27, 1985, directly to this court. He didn't, and therefore U.S. Fire insists that the appeal is jurisdictionally untimely. Flapdoodle. No statute authorizes an appeal from a bankruptcy judge to the court of appeals.[1] The only way to us was through the district court, and Reichman had to proceed as he did.
 
 
 10
 A related question is what to make of the district court's order "dismissing" the appeal. The bankruptcy court had entered a final order, and parties may appeal to the district court as of right from final orders. 28 U.S.C. Sec. 158(a). The district judge must have meant to affirm the bankruptcy court's decision on the basis of the law of the case. It would be pointless to send the case back for such a ministerial correction. We modify the district court's disposition from "dismissal" of the appeal to affirmance, which gives us something to review.
 
 
 11
 The next thorn on this bush concerns the subject to be reviewed. Reichman did not make a motion to set aside the default, so nothing new has happened since 1983. The only thing that could be reviewed is the propriety of the district court's decision in 1983, which the district judge declined to revisit. If the decision in 1983 was interlocutory, then the appeal from the final judgment presents the merits of the default. An appeal from the final judgment brings up all antecedent issues. United States v. Clark, 445 U.S. 23, 25-26 n. 2, 100 S.Ct. 895, 898 n. 2, 63 L.Ed.2d 171 (1980); Exchange National Bank v. Daniels, 763 F.2d 286, 290 (7th Cir.1985). But if the decision in 1983 was "final" and appealable at the time, then Reichman had to appeal at once. If the time to appeal ran out, there is nothing to review and we must dismiss the appeal for want of jurisdiction. See Browder v. Director, Department of Corrections, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299 (1950); Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1549 (11th Cir.1986); Exchange National Bank, 763 F.2d at 291-92.
 
 
 12
 There is a simple argument that the order of default was final in 1983 and that Reichman's time to appeal has expired. The district court's disposition was designed to put an end to the dispute between Reichman and U.S. Fire. We have taken a flexible approach to the definition of finality in bankruptcy cases, holding that a decision is "final" when it wraps up a piece of litigation that would have been a stand-alone suit outside of bankruptcy law. E.g., In re Morse Electric Co., 805 F.2d 262, 264-65 (7th Cir.1986); In re Wagner, 808 F.2d 542, 544-45 (7th Cir.1986). The dispute between Reichman and U.S. Fire could stand alone outside bankruptcy; indeed it does stand alone in the courts of New York. The default ended the litigation. So Reichman could have appealed in 1983, and now it is three years too late.
 
 
 13
 We shall assume for current purposes that Reichman could have appealed. That does not necessarily mean that he had to. There is a twilight zone of orders in bankruptcy law in addition to those that end the case and those that would be treated as "collateral orders" immediately appealable in ordinary civil litigation under Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). A "final" final order must be appealed forthwith; a "collateral" final order need not be appealed but merges with the final judgment and may be appealed at the end of the case. The additional category of bankruptcy orders, treated as final for purposes of 28 U.S.C. Sec. 158(d), includes many that would not be immediately appealable in an ordinary civil case. We tolerate these appeals in part because of the need to tie up the many subsidiary matters that litter the road to the distribution of assets in bankruptcy. A court cannot wait until the end of the case to allow the appeal, because final disposition in bankruptcy (the plan, distribution, and discharge) depends on prior, authoritative disposition of subsidiary disputes. The separable disputes that can be handled as individual cases may be dealt with as they arise, the better to advance the end of the whole bankruptcy case. These interim orders, treated as final for purposes of Sec. 158(d), often do not produce separate judgments. If we took the view that any order that may be appealed in bankruptcy, must be appealed on pain of forfeiture of all review, we would be flooded with appeals. Because it has proved impossible to define exactly the set of orders to be treated as final under Sec. 158(d), litigants would resolve all doubts in favor of instant appeal. The torrent of appeals would inundate the courts of appeals and ultimately retard rather than advance the disposition of the underlying bankruptcy.
 
 
 14
 To avoid inducing parties to take indiscriminate appeals, the failure to appeal an order in a bankruptcy case must forfeit later review only when the order would have been final under the more stringent standards of 28 U.S.C. Sec. 1291. That is, the forfeiture rules that apply to ordinary litigation apply in bankruptcy cases too. This approach has substantial support in the bankruptcy rules that became effective on August 1, 1983, two months before the district court's Delphic pronouncement concerning the default. Rule 7054(a), which applies to all adversary proceedings, states: "Rule 54(a)-(c) F.R.Civ.P. applies in adversary proceedings." Fed.R.Civ.P. 54(b) provides in turn that in a multi-party proceeding, a judgment finally disposing of one claim or one party is not final unless the district court makes certain findings allowing immediate appeal. We have held, see Morse and In re Sandy Ridge Oil Co., 807 F.2d 1332, 1333-34 (Dec. 3, 1986), that these findings are not invariably necessary to an appeal in a bankruptcy case; but a party is entitled to rely on the absence of these findings when deciding whether a failure to appeal will wipe out its right to appellate review. No findings, no risk of forfeiture. This was a multi-party adversary proceeding in which the district court did not make the findings required by Rule 54(b). Outside of bankruptcy, therefore, Reichman could not have appealed; inside bankruptcy, the failure to take an available appeal did not forfeit all review.
 
 
 15
 Similarly, Bankruptcy Rule 9021(a) provides in part that: "Every judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document." This tracks Fed.R.Civ.P. 58, which has been treated as establishing a mechanical rule. The entry of the Rule 58 "separate document" notifies the party that the time to appeal has begun to run. It may be possible to appeal in advance of the Rule 58 judgment, see Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), but it is never necessary to do so. United States v. Indrelunas, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973); Parisie v. Greer, 705 F.2d 882, 891-92 (7th Cir.1983) (en banc) (Eschbach, J., for a majority on this point). A party safely may defer the appeal until Judgment Day if that is how long it takes to enter the document. The more mechanical the application of a jurisdictional rule, the better. See Bailey v. Sharp, 782 F.2d 1366, 1368 (7th Cir.1986), and id. at 1371-73 (concurring opinion); Stelpflug v. Federal Land Bank, 790 F.2d 47, 49 (7th Cir.1986). The chief and often the only virtue of a jurisdictional rule is clarity. It allocates adjudicatory powers among courts. Unless the rule is precise, neither the litigants nor the judges know who is in charge at any given time. They may squander time on preliminary matters, as we have had to do; indeed, the jurisdictional problems in this case are substantially more difficult than the merits.
 
 
 16
 Rule 9021(a) produces a small measure of certainty. The only judgment on a separate piece of paper is the one of September 27, 1985. The draft default judgment that U.S. Fire wrote for Judge Lipkin was not entered in 1983. The bankruptcy judge had no authority to enter it (and did not); the district judge, who had the authority, deferred decision on March 31, 1983. Then in dealing with the appeal from Judge Lipkin's refusal to allow Reichman to answer the complaint, the district judge simply stated that the "Order" (denying leave to file the answer) was "AFFIRMED". There was no judgment on a separate piece of paper. The time for an appeal therefore did not begin until the final decision in September 1985. The appeal from the district court to this court is timely, and so we have jurisdiction to review the default of 1983.
 
 
 17
 But did the district court have power to adjudicate the appeal in 1985? If the district court lacked power, that carries over on review of its decision. The declaration of default occurred in 1983, while the adversary proceeding was live. By the time of the final judgment, however, Reichman had settled with the trustee and U.S. Fire had prevailed on the merits against the trustee. The bankrupt estate was out of the picture; only a squabble between Reichman and U.S. Fire remained. In re Chicago, Rock Island & Pacific R.R., 794 F.2d 1182, 1187-88 (7th Cir.1986) (Sanborn II ), holds that when a dispute no longer affects the estate or the relations among creditors of the estate, the bankruptcy jurisdiction lapses and the district court must find another source of jurisdiction or dismiss the case. Sanborn II could mean that this adversary proceeding must be treated as a separate lawsuit. We do not know whether a suit between Reichman and U.S. Fire could come under the diversity jurisdiction.
 
 
 18
 At the time of the decision about the default, however, the adversary proceeding was supported by the jurisdiction of bankruptcy courts over "related" proceedings, a jurisdiction now codified at 28 U.S.C. Sec. 157(c)(1). At the time the decision was taken, the power to act was beyond question. The decision did not become less effective just because entry of the "separate judgment" took some time. Moreover, until the entry of the final judgment of September 27, 1985, the dispute between the estate and U.S. Fire technically remained open. The judgment of September 27 therefore wrapped up an adversary proceeding that was still "related" to the Kilgus estate. The district court had subject matter jurisdiction.
 
 
 19
 At last we may reach the merits. The trustee filed the adversary proceeding in October 1982. U.S. Fire filed its cross-claim against Reichman in December 1982. We shall assume that Reichman did not receive a copy, although he does not deny having actual knowledge of the filing. On January 21, 1983, U.S. Fire moved for the entry of a default judgment. The motion recites service on Reichman personally. Moreover, on January 28, 1983, counsel for the trustee mailed Reichman notice of both the cross-complaint and the motion for a default judgment. A hearing was held on March 7, 1983; Reichman had actual notice of this and did not attend. Throughout the period Reichman was represented by counsel, who had filed a suit in New York about the same subject. Not until April 1, 1983, did counsel for Reichman enter an appearance and try to answer either the trustee's complaint or U.S. Fire's cross-claim. The bankruptcy judge and district judge were entitled to conclude that Reichman deliberately ignored the bankruptcy case. A party is not free to ignore a suit, to appear only after he has been defaulted, and to say that the appearance must be treated as timely. Reichman had ten days to answer the cross-claim and took more than 100. Reichman offers no extenuating circumstances.[2] In 1983, and in this court in 1986, Reichman relied entirely on U.S. Fire's stamped notation that it served the cross-claim on counsel rather than Reichman personally. He does not deny having actual notice of the cross-claim, the motion for a default judgment, and the date of the hearing.
 
 
 20
 Judges must be able to enforce deadlines. Doing so means the use of sanctions, even severe ones such as default, when parties ignore the ongoing proceedings and demand the right to set their own deadlines. The entry of defaults may be especially important in bankruptcy cases, which may involve hundreds or thousands of parties. Toleration of delay could string out the case interminably, its pace established by the most slothful of the parties. Many decisions in bankruptcy cases depend on the entitlements established at earlier steps; the reopening of defaults could require the recalculation or reopening of many additional steps. Decisions about dismissals and default judgments are reviewed under a deferential standard in ordinary civil litigation. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); Societe Internationale v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); Tolliver v. Northrop Corp., 786 F.2d 316, 318-19 (7th Cir.1986). We are even more reluctant to disturb the exercise of discretion in a bankruptcy case. There is no reason to do so here. The judgment is modified in accordance with the discussion of page 1115 ante, and, as modified,
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Hon. James B. Parsons, of the Northern District of Illinois, sitting by designation
 
 
 [1]
 Not to be outdone by U.S. Fire, Reichman cites us to 28 U.S.C. Sec. 1293(b) and then contends that Sec. 1293(b) does not authorize a direct appeal from a bankruptcy court's order because an appeal requires the consent of both parties, consent U.S. Fire did not give. Reichman overlooks the small point that Sec. 1293 was repealed in 1984
 
 
 [2]
 At oral argument Reichman's current lawyer declared that after receiving the letter of January 28, 1983, Reichman had trouble obtaining counsel in Peoria. The record does not support this claim, and "testimony" by appellate counsel is no substitute for evidence in the record. There is also no suggestion in the record that Reichman presented this contention to the district court in either 1983 or 1985. Cf. Passarella v. Hilton International Co., 810 F.2d 674 (7th Cir.1987) (miscarriage of the mail between defendant and its insurer is an extenuating circumstance)