**OUTBOARD MARINE CORPORATION, Plaintiff,**

**v.**

**CHANTIERS BENETEAU, Societe Anonyme Z.I. Des Mares, Beneteau (U.S.A.) Ltd. and Beneteau Manufacturing, Inc., Defendants.**

**No. 87 C 10148.**

United States District Court, N.D. Illinois, E.D.

May 13, 1988.

---

Roger D. Greer, James P. White, Welsh & Katz, Ltd., Chicago, Ill., for plaintiff.

Russ M. Strobel, Jenner & Block, Chicago, Ill., Laurence Hefter, Jenner & Block, Washington, D.C., for defendants.

## MEMORANDUM ORDER

ZAGEL, District Judge.

Before the court is the motion of Chantiers Beneteau, S.A. ("Beneteau S.A."), Beneteau (U.S.A.) Ltd. ("Beneteau U.S.A.") and Beneteau Manufacturing, Inc. ("Beneteau Manufacturing") to dismiss Outboard Marine Corporation's ("OMC") complaint for insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(5).

OMC served each of these defendants pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii) by mailing a copy of the summons and complaint to their registered agents. The agents for Beneteau U.S.A. and Beneteau Manufacturing, while admitting they received the papers, did not sign and return the acknowledgment forms, as required by the Rule. Although Beneteau S.A.'s agent signed and returned the acknowledgment form, Beneteau S.A. argues that he was not authorized to accept service of process for this action.

■ With respect to Beneteau U.S.A. and Beneteau Manufacturing, we are persuaded that OMC's attempt to serve them by mail was insufficient. Rule 4(c)(2)(C)(ii) states that: "If no acknowledgment of service * * * is received by the sender within 20 days after the date of mailing, service * * * shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3)." There is no question here that the registered agents for Beneteau U.S.A. and Beneteau Manufacturing did not sign and return the acknowledgment forms. Thus, under the express terms of the Rule, service of process was insufficient and must be accomplished in accordance with other subsections.

Having stated as much, we are not unsympathetic to the plaintiff's position: allowing these defendants to compel service of process by deliberately refusing to do what the Rule requires flies in the face of Rule 1, which states that the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every ac-

tion." Our displeasure notwithstanding, we are bound to apply the Rule as written, not imagined. The inequity of the Rule would be more appropriately addressed to the Standing Committee on Practice and Procedure of the Judicial Conference. *See Bailey v. Sharp,* 782 F.2d 1366, 1374 (7th Cir.1986) (Easterbrook, J., concurring).

■ Although we conclude that service on Beneteau U.S.A. and Beneteau Manufacturing was insufficient, we do not believe dismissal is in order. Rather, we elect to treat the defendants' motion to dismiss as a motion to quash; as such, the motion is granted. *See* 5 Wright & Miller, *Federal Practice and Procedure* sec. 1354, at 584–85 (1969).[1] Additionally, pursuant to Rule 4(c)(2)(D), we order the respective defendants to pay the cost of reserving them personally. *See also* 4A Wright & Miller, *Federal Practice and Procedure* sec. 1092.1, at 58 (1987).

■ Turning to Beneteau S.A., OMC contends that service on Vincent L. Ramik is proper because Ramik was designated as Beneteau S.A.'s representative "in the United States on whom may be served notices or process in proceedings affecting the mark." 15 U.S.C. sec. 1051(d). The statute expressly authorizes serving such representatives by mail. *Id.* Here, Ramik received process, signed the acknowledgment form, and returned it. Beneteau S.A. responds that sec. 1051(d) is limited to "proceedings in the [United States Patent and Trademark Office]." Defendants' Reply, at 4.

Neither party has cited, nor have we been able to discover, any case interpreting sec. 1051(d) in this context. We are thus confronted with an issue of first impression: whether a representative designated under sec. 1051(d) is, by virtue of that designation, authorized to accept service of process in actions outside the Patent and Trademark Office ("PTO"). Section 1051(d) authorizes service in "proceedings

affecting the mark." There can be no doubt that this action is one affecting the mark: OMC has alleged trademark infringement, unfair competition, a state anti-dilution violation, as well as other claims. The only question, then, is whether a suit filed in federal district court is a "proceeding" under sec. 1051(d). The statute is less than pellucid.

The legislative history of sec. 1051(d) suggests that the term "proceedings" is indeed limited to proceedings before the PTO. Section 1051(d) originally provided for service "in any *action* or proceeding affecting his trademark brought under the provisions of the [Lanham] act, or under the provisions of any other laws of the United States." 3 J. Gilson, *Trademark Protection and Practice* sec. 1, at 1–5 (1987) (emphasis supplied). It was suggested, however, that the service of process provision "should be limited to the process in a *proceeding* affecting the registration; it should not be extended so as to enable a party to get jurisdiction of a foreign registrant in an *action* not confined— or a proceeding not confined to his registration." *Id.* (emphasis supplied).

Sec. 1051(d), as enacted, makes no mention of the term "action." It is therefore reasonable to infer that this term was elided from the section in order to limit the service provision to proceedings in the PTO. It should be noted that the recommendation to limit process to proceedings affecting *registration* was not enacted into law; rather, it extends to all proceedings affecting the trademark. But it does not reach this *action;* and therefore we hold that service on Ramik was insufficient under Rule 12(b)(5). As with Beneteau U.S. A. and Beneteau Manufacturing, however, we elect to quash service rather than dismiss the claim. Accordingly, we suggest that OMC once again attempt to serve Beneteau S.A., this time in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

---

**1.** This result is consistent with Rule 1 because it

saves the plaintiff the time and expense of refil-

Commercial Matters.[2]

SO ORDERED.

ing; only service need be repeated.

2. The Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Article 71, 20 U.S.T. 361, 362 (1969).