**FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 14 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SAN ANTONIO WINERY, INC., | No. 21-56036 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-09663-GW-KS |
| v. | |
| JIAXING MICAROSE TRADE CO., LTD., | OPINION |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted August 3, 2022
Pasadena, California

Before: Eugene E. Siler,[*] Consuelo M. Callahan, and Holly A. Thomas, Circuit Judges.

Opinion by Judge H.A. Thomas

_____
[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

# SUMMARY[**]

## Lanham Act

The panel vacated the district court's order denying San Antonio Winery, Inc.'s motion for a default judgment against Jiaxing Micarose Trade Co., Ltd., in an action in which San Antonio asserts claims under the Lanham Act and related state-law claims.

Section 1051(e) of the Lanham Act allows trademark applicants domiciled in foreign countries to designate "a person resident in the United States on whom may be served notices or process in proceedings affecting the mark." If the foreign-domiciled applicant declines to designate someone, or the designated person cannot be found, the statute provides that the applicant may be served through the Director of the U.S. Patent and Trademark Office (PTO).

San Antonio filed a proof of service in which it stated that it had served Jiaxing through the Director of the PTO. When Jiaxing did not appear to defend itself in the action, the district court clerk granted San Antonio's request for entry of default, after which San Antonio filed the motion for default judgment in which it asked the district court to issue a permanent injunction. Noting the lack of circuit-level precedent on whether the procedures of Section 1051(e) provide a means of serving defendants in court proceedings, the district court denied the motion on the ground that Jiaxing had not been properly served.

The panel held that the service procedures of Section 1051(e) apply not only in administrative proceedings before the PTO, but also in court proceedings. Because the district court erred in concluding otherwise, the panel vacated the district court's order and remanded for further proceedings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# COUNSEL

Jeffrey G. Sheldon (argued) and Katherine M. Bond, Cislo & Thomas LLP, Los Angeles, California, for Plaintiff-Appellant.

Jiaxing Micarose Trade Co. Ltd., Xiuzhou District, Jiaxing City, Zhejiang, China, pro se Defendant-Appellee.

Amanda Lee Mundell (argued) and Daniel Tenny, Appellate Staff Attorneys, Civil Division; Tracy Wilkison, United States Attorney; Brian M. Boynton, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; Thomas L. Casagrande, Associate Solicitor; Christina J. Hieber, Senior Counsel for Trademark Policy and Litigation; Farheen Y. Rasheed, Acting Solicitor; United States Patent and Trademark Office; Alexandria, Virginia; for Amicus Curiae United States of America.

H.A. THOMAS, Circuit Judge:

The Lanham Act allows trademark applicants domiciled in foreign countries to designate "a person resident in the United States on whom may be served notices or process in proceedings affecting the mark." 15 U.S.C. § 1051(e). If the foreign-domiciled applicant declines to designate someone, or the designated person cannot be found, the statute provides that the applicant may be served through the Director of the U.S. Patent and Trademark Office (PTO). *Id.*

This case presents a question of first impression in the circuit courts of appeals: Do the procedures of Section 1051(e) provide a means of serving defendants in court proceedings affecting a trademark? Or do they apply only in administrative proceedings before the PTO? We conclude that Section 1051(e) applies in both court and administrative proceedings. We therefore vacate the district court's decision to the contrary and remand for further proceedings.

## I.

## A.

San Antonio Winery (San Antonio) is a historic Los Angeles winery, best known for its Stella Rosa brand of wines. The winery has long been owned and operated by members of the Riboli family. San Antonio has registered the trademarks RIBOLI and RIBOLI FAMILY, which it has used since at least 1998 to market its wines and other products.

2

Jiaxing Micarose Trade Co., Ltd. (Jiaxing) is a Chinese company that has sold products using the Riboli name. In 2018, Jiaxing registered the mark RIBOLI for use in connection with articles of clothing and shoes. In 2020, Jiaxing applied to register the mark RIBOLI for use with additional types of products, including wine pourers, bottle stands, containers, cocktail shakers, dishware, and various other kitchen and household items. Jiaxing's registrations reflect considerable overlap with products sold by San Antonio at its wineries and restaurants.

After learning that Jiaxing was using the Riboli name to sell products in the United States, including through Amazon.com, San Antonio filed suit against the company in the Central District of California. The complaint asserted claims against Jiaxing under the Lanham Act for trademark infringement, trademark dilution, and false designation of origin, as well as related state-law claims. Among other forms of relief, San Antonio sought an injunction prohibiting Jiaxing from using the mark RIBOLI in connection with its products, an order cancelling Jiaxing's 2018 registration of the RIBOLI mark, and an order either directing Jiaxing to abandon its 2020 application to register RIBOLI for additional uses or prohibiting the PTO from granting the application.[1]

---

[1] After San Antonio filed suit, Jiaxing abandoned its 2020 application to register the mark RIBOLI for use with kitchen and household goods. In 2021, the Trademark Trial and Appeal Board cancelled Jiaxing's original 2018 registration after San Antonio filed a petition to cancel the registration, and Jiaxing failed to

San Antonio's efforts to serve Jiaxing with process gave rise to this appeal.

**B.**

Because Jiaxing is a Chinese company, San Antonio's service of process was governed by the rules for serving parties abroad. One source of such rules is Federal Rule of Civil Procedure 4(f).[2] Under Rule 4(f), a defendant may be served abroad by, among other means, "any internationally agreed means of service that is reasonably calculated to give notice," including the procedures of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the Hague Service Convention or Convention).

The Hague Service Convention is the principal international agreement governing service of process. Both the United States and China are parties to the Convention. Pursuant to Rule 4(f), San Antonio could therefore have attempted to serve Jiaxing through the procedures set forth in the Convention. In general terms, this would have required San Antonio to deliver the summons and complaint to a "Central Authority" designated by the Chinese government, which would then

---

appear to oppose the petition. Jiaxing thus no longer holds a registration for the RIBOLI mark.

[2] Although Rule 4(f), by its terms, applies only to service on individuals, Rule 4(h)(2) provides that corporations domiciled abroad may be served through the procedures of Rule 4(f), with one exception not relevant here.

have responsibility for effecting service on Jiaxing. *See generally Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

Concerned with the amount of time it might take to effect service under the Hague Service Convention, San Antonio instead sought to serve Jiaxing under a provision of the Lanham Act applicable to foreign domiciliaries who apply to register a trademark. This provision states that if a trademark applicant "is not domiciled in the United States the applicant may designate, by a document filed in the [PTO], the name and address of a person resident in the United States on whom may be served notices or process in proceedings affecting the mark." 15 U.S.C. § 1051(e). If such a designation is made, then "notices or process may be served upon the person so designated by leaving with that person or mailing to that person a copy [of the notices or process] at the address specified in the last designation so filed." *Id*. If, however, "the person so designated cannot be found at the address given in the last designation, or if the registrant does not designate . . . a person . . . on whom may be served notices or process in proceedings affecting the mark, such notices or process may be served on the Director [of the PTO]." *Id*.

Seeking to avail itself of the service procedures of Section 1051(e), San Antonio first inquired whether a U.S.-based attorney who had represented Jiaxing in connection with its trademark applications would accept service on Jiaxing's behalf.  When that attorney did not respond, San Antonio served the summons,

5

complaint, and accompanying documents on the Director of the PTO. Upon receiving the documents, the PTO sent Jiaxing a letter confirming that "[p]ursuant to 15 U.S.C. § 1051(e), service of process in the . . . lawsuit was effectuated" through service on the Director. The PTO sent Jiaxing copies of the documents and also placed them in Jiaxing's trademark registration files.

## C.

San Antonio filed a proof of service in which it stated that it had served Jiaxing through the Director of the PTO. When Jiaxing did not appear to defend itself in the action, the district court clerk granted San Antonio's request for entry of default. After default was entered, San Antonio filed a motion for default judgment in which it asked the district court to issue a permanent injunction prohibiting Jiaxing from using the RIBOLI and RIBOLI FAMILY marks.

The district court denied San Antonio's motion for default judgment on the ground that Jiaxing had not been properly served. Noting the lack of circuit-level precedent on whether the procedures of Section 1051(e) provide a means of serving defendants in court proceedings, the district court followed the decision in *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 430 F. Supp. 2d 1064 (E.D. Cal.

2005), which held that the procedures of Section 1051(e) apply only in administrative proceedings before the PTO.[3]

San Antonio asked the district court to certify its order for immediate appeal under 28 U.S.C. Section 1292(b). The district court granted the request, and we agreed to accept the interlocutory appeal.

## II.

Whether Section 1051(e) provides a means of serving defendants in court proceedings is a question of law that we review de novo. *See United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020). In answering this question, we follow well-established rules of statutory construction. "We begin with the statutory text."

---

[3] The district court acknowledged that district courts across the country were split on this issue. *See San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.*, No. CV-20-9663, 2021 WL 6752252, at *3–4 (C.D. Cal. Apr. 5, 2021); *compare Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.*, No. 2:19-cv-109, 2019 WL 5084162, at *2–3 (M.D. Fla. Mar. 15, 2019) (holding that Section 1051(e) provides a means of service in court proceedings); *Haemoscope Corp. v. Pentapharm AG*, No. 02 C 4261, 2002 WL 31749195, at *3 (N.D. Ill. Dec. 9, 2002) (same); *V & S Vin & Spirit Aktiebolag v. Cracovia Brands, Inc.*, 212 F. Supp. 2d 852, 854–56 (N.D. Ill. 2002) (same), *with Vantone Grp., LLC v. Yangpu NGT Indus. Co.*, No. 13CV7639, 2016 WL 3926449, at *2–3 (S.D.N.Y. July 15, 2016) (holding that Section 1051(e) applies only in administrative proceedings before the PTO); *LA Gem & Jewelry Design, Inc. v. Gold Star Jewellery PVT Ltd.*, No. CV 14-4807, 2014 WL 10401936, at *3 (C.D. Cal. Aug. 11, 2014) (same); *Gallo*, 430 F. Supp. 2d at 1072–83 (same); *Sunshine Distrib., Inc. v. Sports Auth. Mich., Inc.*, 157 F. Supp. 2d 779, 787 (E.D. Mich. 2001) (same); *Outboard Marine Corp. v. Chantiers Beneteau*, 687 F. Supp. 366, 368–69 (N.D. Ill. 1988) (same).

*United States v. Lopez*, 998 F.3d 431, 435 (9th Cir. 2021). If the meaning of the text is plain, then that is also where we end. *Id.*

Here, we interpret Section 1051(e), which governs service of notices or process in "proceedings affecting [a trademark]." 15 U.S.C. § 1051(e). Because court proceedings are "proceedings," and because those proceedings can "affect" a trademark, we conclude that Section 1051(e) provides a means of serving process in court.

**A.**

We turn first to the word "proceedings." The phrase "proceedings affecting the mark" has been part of the Lanham Act since the statute's enactment in 1946. Pub. L. No. 79-489, § 1(d), 60 Stat. 427, 428 (1946). The word "proceedings" requires no complex interpretation: its plain and ordinary meaning includes proceedings in court. Indeed, as dictionary definitions from the time of the Lanham Act's passage make clear, court proceedings are the prototypical form of legal proceeding. *See United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005) ("[W]e follow the common practice of consulting dictionary definitions to clarify . . . ordinary meaning[]."). The 1933 edition of Black's Law Dictionary defined the word "proceeding" as, "[i]n a general sense, the form and manner of conducting juridical business before a court or judicial officer." *Proceeding*, Black's Law Dictionary (3d ed. 1933). Similarly, the 1936 edition of Webster's New

International Dictionary of the English Language defined a proceeding as, among other things, "[t]he course of procedure in an action at law" and "[a]ny step or act taken in conducting litigation." *Proceeding*, Webster's New International Dictionary of the English Language (2d ed. 1936). Nothing in the statute suggests that Congress, in enacting Section 1051(e), intended to depart from the well-understood meaning of this word.

It is equally clear that court proceedings can "affect" a trademark. From the time of its enactment, the Lanham Act has granted courts authority to affect trademarks in various ways, including the power to "determine the right to [a trademark] registration, order the cancelation of registrations, . . . [and] restore canceled registrations." Pub. L. No. 79-489, § 37, 60 Stat. at 440; *see also* 15 U.S.C. § 1119 (version in effect today). This authority has been exercised. Our case law is replete with examples of civil cases affecting trademarks. *See, e.g.*, *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 634 (9th Cir. 2007) (affirming the district court's cancellation of a trademark); *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (same); *see also* 5 McCarthy on Trademarks & Unfair Competition § 30:109 (5th ed. Sept. 2022 update).

Actions like the one filed by San Antonio—which sought, among other things, to cancel the RIBOLI mark registered by Jiaxing in 2018—comfortably fall

within the plain and ordinary meaning of the phrase "proceedings affecting the mark." These actions are "proceedings," and their aim is to "affect" a trademark. Our analysis could end here.

But if we needed another clue to the meaning of Section 1051(e), the statute's reference to the service of "notices or process" provides it. "Process" connotes court proceedings. It refers to "the means of compelling [a] defendant in an action to appear in court." *Process*, Black's Law Dictionary (3d ed. 1933); *see also Process*, Black's Law Dictionary (11th ed. 2019) ("A summons or writ, esp. to appear or respond in court."); 72 C.J.S. *Process* § 1 (2022 update) ("[I]n a narrow sense of the term 'process' is limited to judicial writs in an action, or at least to writs or writings issued from or out of a court . . . .").

The use of the word "process" in Section 1051(e) is particularly significant because there is no process served in administrative proceedings before the PTO. Proceedings before the PTO are initiated with "notices" issued by the agency. *See, e.g.*, 37 C.F.R. § 2.113(a). Were we to construe Section 1051(e) to apply solely to administrative proceedings, the word "process" would be superfluous.[4] Only

---

[4] As would be the provision permitting service upon the Director of the PTO: in a situation where a foreign trademark applicant did not designate a U.S. person to receive service, or that person could not be found, the agency would be required to serve a notice upon itself. *See, e.g.*, 37 C.F.R. § 2.113(a) (providing that administrative proceedings are initiated with notices issued by the agency).

10

"notices" would ever be served. We decline to adopt this interpretation. *See City of Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

## B.

The district courts that have held that Section 1051(e) applies only in administrative proceedings have relied largely on reasoning that goes beyond the statutory text. We have considered these points but are not persuaded by them.[5]

Some courts have found it significant that the language now codified at Section 1051(e) was enacted as part of Section 1 of the original Lanham Act, which set forth the process for filing an application for a registered trademark. *See Gallo*, 430 F. Supp. 2d at 1074–75. They reasoned that the placement of the service provision alongside general trademark application requirements—rather than with other provisions of the Lanham Act that govern court proceedings—

---

[5] Jiaxing did not enter an appearance in this matter and therefore has not provided briefing in opposition to San Antonio's position. Our review of the novel issue presented in this case has been aided in significant part by the district courts that have previously considered it, and, in particular, by the Eastern District of California's decision in *Gallo*, 430 F. Supp. 2d 1064. Although we part ways with the *Gallo* court's conclusion that Section 1051(e) applies only in administrative proceedings, we are grateful for its thorough analysis, which enabled us to fully consider both sides of this issue. In a similar vein, we are thankful for the helpful briefing and argument we received from the United States as *amicus curiae*.

"suggests that Congress may have intended the appointment [of the designated person] to cover only those proceedings concerning the registration of the mark." *Id.* (quoting *V & S Vin*, 212 F. Supp. 2d at 854).

We think there is a simpler explanation. Unlike the version of the statute in effect today, which is written in a permissive fashion, the original Lanham Act *required* foreign trademark applicants to designate a U.S. person to receive service. *See* Pub. L. No. 79-489, § 1(d), 60 Stat. at 428 (providing that a foreign trademark applicant "shall designate . . . the name and address of some person resident in the United States on whom may be served notices or process in proceedings affecting the mark"). It thus makes sense that the designation requirement would originally have been included with other requirements the applicant had to satisfy at the time the application was filed.

Other courts have looked to legislative history. *See Outboard Marine*, 687 F. Supp. at 368. This history, however, is murky at best. The text of what ultimately became Section 1051(e) evolved over the course of more than two decades between 1924, when it was first proposed, and 1946, when the Lanham Act was finally enacted. *See Gallo*, 430 F. Supp. 2d at 1076–81 (comprehensively surveying the drafting history of Section 1051(e)). One early proposal provided that the designated representative could be served with notices or process in "proceedings . . . brought under the provisions of this Act or under other laws of

12

the United States"—language which suggests court proceedings. S. 2679, 68th Cong. § 8 (1924). Some subsequent proposals, however, restricted the applicability of the designation provision to "proceedings affecting *the registration* of the trademark," which perhaps gestures more toward administrative proceedings. *E.g.*, H.R. 6248, 69th Cong. § 8 (1925) (emphasis added).

The important point for our purposes is that neither of these proposals became law. And there is little in the drafting history concerning the text that Congress finally enacted. *See Gallo*, 430 F. Supp. 2d at 1078–79. What we do know is that the language Congress chose is clear. Nothing in the legislative history convinces us that we should depart from its plain meaning. *See Schroeder v. United States*, 793 F.3d 1080, 1086 (9th Cir. 2015).

Finally, the *Gallo* court found it notable that other, unrelated statutes contain service provisions that more clearly state that they apply in both court and administrative proceedings. *See Gallo*, 430 F. Supp. 2d at 1082–83. As one example, the Federal Food, Drug, and Cosmetic Act requires "every manufacturer offering an electronic product for importation into the United States to designate in writing an agent upon whom service of all administrative and judicial processes, notices, orders, decisions, and requirements may be made." 21 U.S.C. § 360mm(d). The *Gallo* court reasoned that because Congress explicitly referenced court proceedings in the service provisions of other statutes, its failure to do so in

Section 1051(e) of the Lanham Act is an indication that Section 1051(e) does not apply in court. *See Gallo*, 430 F. Supp. 2d at 1083.

We disagree. Although the use of different language in separate provisions of the *same* statute can indicate that the provisions have different meanings, this presumption "can hardly be said to apply across the whole *corpus juris*."[6] Antonin Scalia & Bryan A. Garner, *Reading Law*, 170–72 (2012). The statutes identified by the *Gallo* court have no connection to the Lanham Act—they have nothing to do with trademarks, or even intellectual property writ large. These statutes are therefore of little value in determining the meaning of Section 1051(e).[7] *See United States v. King*, 478 F.2d 494, 504 (9th Cir. 1973) ("The fact that [Congress] used

---

[6] Our entire body of law.

[7] If we required reference to another statute to interpret Section 1051(e), the Patent Act would likely be the most relevant. The Patent Act contains a service provision similar to that set forth in Section 1051(e): it permits a "patentee not residing in the United States" to designate a U.S. person "on whom may be served process or notice of proceedings affecting the patent or rights thereunder." 35 U.S.C. § 293. There is no doubt that the phrase "proceedings affecting the patent or rights thereunder" in the Patent Act includes court proceedings—the Patent Act's service provision expressly references proceedings in federal district court. *See id.* (providing that if the patentee declines to designate a person to receive service, "the Eastern District of Virginia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs"). That Section 1051(e) contains similar language—referring to "proceedings affecting the mark"— supports our conclusion that it, too, applies in court proceedings.

14

different language to achieve the same result in a totally unrelated statute is irrelevant.").

In sum, we see no reason to look beyond the statutory text. Because the ordinary meaning of "proceedings affecting the mark" includes proceedings in court, we conclude that the procedures of Section 1051(e) may be used to serve process in such proceedings.

## C.

Our decision today is not in conflict with the Hague Service Convention.[8] The Convention's procedures apply only when the method of service at issue "require[s] the transmittal of documents abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988); *see also id.* at 704. When the law of the forum state permits service through means that do not require the international transmittal of documents, the Convention is not triggered. *Id.* at 706–08 (holding that a state law permitting a foreign corporation to be served domestically through its U.S. subsidiary did not implicate the Hague Service Convention).

---

[8] Our decision is also not in conflict with Rule 4, which expressly contemplates that Congress might create alternative service procedures like those contained in Section 1051(e). *See* Fed. R. Civ. P. 4(h) (setting forth rules for serving a corporation that apply "[u]nless federal law provides otherwise").

Service under Section 1051(e) occurs domestically and thus falls outside the scope of the Convention. The statute presents trademark applicants with a choice: either designate a U.S. person to be served with notices or process, or submit to service through the Director of the PTO. In each case, service occurs within the United States, without the international transmittal of documents.

It is of no moment that the recipient of the served documents—the designated U.S. person or the Director of the PTO—might ultimately send them to a defendant domiciled in a country that is a signatory to the Convention. As the Supreme Court explained in rejecting a similar argument, once service on the U.S. recipient is valid and complete, "[the] inquiry ends and the Convention has no further implications."[9] *Id.* at 707; *accord Night Owl*, 2019 WL 5084162, at *3 (holding that service on the Director of the PTO under Section 1051(e) does not implicate the Hague Service Convention).

---

[9] Of course, under the Due Process Clause, foreign defendants remain entitled to "notice reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Schlunk*, 486 U.S. at 705 (quoting *Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 314 (1950)). We do not foreclose the possibility that a defendant may be able to establish, under the circumstances of a given case, that service under Section 1051(e) failed to provide constitutionally adequate notice. Here, however, the district court did not rely on a lack of notice to Jiaxing as a reason for denying default judgment. We therefore do not address this point further.

16

## III.

We hold today that the service procedures of Section 1051(e) of the Lanham Act apply in court proceedings. The district court erred in concluding otherwise. Because the district court denied default judgment on this threshold ground, it did not consider the merits of San Antonio's default judgment motion. We therefore vacate the district court's order and remand for it to consider the remaining issues in the first instance.

**VACATED; REMANDED.**[10]

---

[10] Costs on appeal are awarded to San Antonio.